IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

MATTHEW ALLISON, individual;
and TIM NAY, as personal representative
for the ESTATE OF SARA E. ALLISON

        Plaintiffs,

    v.

SMOOT ENTERPRISES INC., dba
Smoot Brothers Transportation;
JAMES DECOU; PETER BARNES;
HORIZON TRNSPORT, INC.; and
JONATHAN HOGABOOM,

        Defendants.

Case No. 2:17-cv-01598-SU

**OPINION & ORDER**

SULLIVAN, United States Magistrate Judge:

    Matthew Allison filed his claim for negligence and Tim Nay, as personal representative of the Estate of Sara Allison (collectively, "Plaintiffs") filed a wrongful death action on behalf of the Estate of Sara Allison against corporate defendants Smoot Enterprises, Inc. and Horizon Transport, Inc. and individual defendants

employees of the corporate defendants. The case arose out of a collision that took place in Eastern Oregon and that caused significant injuries to Matthew Allison and that resulted in the death of his wife Sara Allison. A jury trial was held between April 30 and May 10, 2019. Defendants were found to be jointly liable for Plaintiffs' damages. Defendants Horizon Transport Inc. and Jonathan Hogaboom have filed a Motion for a New Trial, or in the Alternative Remittitur (doc. 185) and challenge the jury's damages award. Oral argument was held on August 21, 2019. For the following reasons, the Court DENIES the motion.

## BACKGROUND

The jury reached its verdict in this negligence and wrongful death action on May 10, 2019 and found all named Defendants jointly liable for Plaintiffs' damages. It awarded Matthew Allison economic damages of $600,000 and noneconomic damages of $7,000,000, and awarded the Estate of Sara Allison economic damages of $2,383,463 and noneconomic damages of $10,000,000. It also awarded punitive damages of $5,000,000 against Horizon Transport, Inc. and Hogaboom("Horizon") and $1,500,000 against Smoot Enterprises Inc. and DeCou ("Smoot"). The Court entered Judgment on June 4, 2019, with offsets for amounts previously paid by Smoot in settlement. Smoot had entered into a "Mary Carter" settlement agreement with Plaintiffs prior to trial, and was dismissed from the lawsuit post-verdict. Hogaboom and Horizon (hereafter "Defendants") now challenge the jury's damages award as excessive and request this Court to order a new trial or to reduce the damages amount through remittitur.

Page 2 – OPINION AND ORDER

## DISCUSSION

### I.    Motion for New Trial

Defendants argue that they are entitled to a new trial for the following reasons: (a) Plaintiffs emphasized corporate conduct and employed "Reptile Theory" and conscience of the community arguments even though the Court had found these references to be impermissible; (b) Plaintiffs were allowed to show an animation to the jury that lacked foundation; (c) the Court impermissibly allowed Plaintiffs to elicit testimony from a law enforcement official on Hogaboom's credibility; and (d) the Court's answer to a jury question caused the jury to double-count damages.

Under Rule 59(a) of the Federal Rules of Civil Procedure, a court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation marks omitted); *see also Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007). Unlike a determination under Rule 50, the Court is not required to view the evidence in the light most favorable to the non-moving party when considering a motion for new trial under Rule 59(a). *Experience Hendrix, LLC v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Instead, the Court "can weigh the evidence and assess the credibility of the witnesses." *Id.* (citing *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam)).

As explained by the Ninth Circuit, after weighing the evidence, the trial judge faces a difficult task:

On the one hand, the trial judge does not sit to approve miscarriages of justice.   His power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it.   On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter.   Probably all that the judge can do is to balance these conflicting principles in light of the facts of the particular case.   If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.

*Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987).

Thus, a trial judge should not award a new trial unless the court has a definite and firm conviction that the jury has made a mistake.  *Id.* at 1372.  "While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury."  *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (quotation marks and citation omitted).

### A. Corporate Conduct and Reptile Theory

Plaintiffs' direct negligence claims against Horizon was dismissed before trial. In light of this dismissal, both Plaintiffs and Horizon brought motions in limine to exclude evidence of corporate conduct.   The Court granted these motions, and Defendants now argue that any evidence or testimony concerning Horizon's corporate conduct and investigation of the collision which resulted in the injuries to Plaintiffs was improper and they are thus entitled to a new trial.  *See* Defs.' Mot. For New Trial or Remittitur at 2.  Defendants also argue that Plaintiff's "Reptile Theory" arguments

Page 4 – OPINION AND ORDER

were a "cleverly disguised attempt to introduce impermissible 'Golden Rule' arguments."[1]  They contend that this is another basis for granting their request for a new trial.  I disagree.

With respect to the corporate conduct references, Defendants' argument is essentially the following: the Court had agreed with the parties that references to Horizon's conduct should be disallowed because Horizon's conduct was not relevant to the claims before the Court, that Plaintiffs nevertheless made these references, that these references inflamed the jury's passions, thus the Court should redo the trial.  *See* Defs.' Mot. For New Trial or Remittitur at 24–25.  But Defendants fail to explain how such references constitute impermissible inflaming of passions sufficient to warrant a new trial.  *See generally*, Defs.' Mot. For New Trial or Remittitur at 24–25.  Despite numerous federal trials that take place each year, Defendants were not able to cite a single case to the Court where such references led the Court to conclude that the jury's passions were impermissibly inflamed and to grant a motion for a new trial.  Defendants  fail to cite cases where courts found that less egregious conduct sufficed for a court to conclude that jury passions were inflamed, which may have allowed the Court to conclude by inference that the allegedly impermissible

---

[1] The "Golden Rule" argument has been defined as: [A] suggestion to the jury by an attorney that the jurors should do unto others, normally the attorney's client, as they would have others do unto them. The typical situation in which such an argument has been employed is the personal injury case in which the plaintiff's counsel suggests to the jurors that they grant the plaintiff the same amount of damages they would want or expect if they were in the plaintiff's shoes.  Kevin W. Brown, *Propriety and prejudicial effect of attorney's "golden rule" argument to jury in federal civil case*, 68 A.L.R. Fed. 333.

references to Horizon's corporate conduct warrant the remedy that Defendants request here.

The cases cited by Defendants from Ohio and South Carolina state court stand for the proposition that inflaming the passions of a jury can be grounds for a new trial. *See Hollingsworth v. Time Warner Cable*, 168 Ohio App. 3d 658, 685, 861 N.E.2d 580 (2006); *see also Branham v. Ford Motor Co.*, 390 S.C. 203, 234, 701 S.E.2d 5 (2010). However, neither case explains why the Court should consider references to Horizon's conduct to constitute impermissible inflaming of passions. The same is true about the Fifth Circuit case cited by Defendants. *See Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233 (5th Cir. 1985). None of these cases are Ninth Circuit or Oregon cases and are not persuasive authority here.

Defendants also argue that Plaintiffs improperly tried to elicit local bias against Horizon, an out-of-state corporation. They cite *Whitehead v. Food Max*, 163 F.3d 265, 275 (5th Cir. 1998) for the proposition that emphasizing a defendant's out-of-state status was sufficient to warrant a new trial. But a fair reading of *Whitehead* indicates that the impermissible references to a corporate defendant's out-of-state status were far more egregious than the references Defendants take issue with here. Here are some of the references by plaintiff's counsel in *Whitehead* that the Fifth Circuit reasonably found to be sufficiently egregious to warrant a new trial:

> *as a little old lawyer down here in Mississippi, to take on a national corporation,* I knew I had to bring in the best experienced person in security that I knew"; and "[n]ow when I, as a lawyer *here in Mississippi,* bring a legal action against a *national corporation* —having done this a few years—they are tough cases." . . . The problem is—*way up there in Troy, Michigan—way up there in Troy, Michigan,* where they

> decide to write a two or three inch thick loss prevention manual, they
> don't think about the customers' safety and security in the parking lot.
> Because they are more concerned about profits and not people.

*Whitehead*, 163 F.3d at 276–77. The Fifth Circuit characterized these statements as "blatant appeal to sectionalism." *Id.* at 76. In addition, what seemed to be particularly concerning for the Fifth Circuit was plaintiff counsel's "shameless refusal to abide by the district court's sustaining Kmart's objections." *Id.* Even after the district court gave repeated curative instructions to remove the taint of plaintiff counsel's tactics, counsel continued on. *See id.* at 77 ("Immediately after the court sustained Kmart's objection . . .counsel returned to this tactic, in total defiance of the district court's ruling . . . In his rebuttal [] notwithstanding the court's having earlier sustained Kmart's objections, [] counsel returned to this improper tactic"). As the trial judge for this case, I am not persuaded that Plaintiffs engaged in conduct that sufficiently resembles the impermissible conduct at issue in *Whitehead*.

With respect to Defendants' argument that Reptile Theory and Golden Rule arguments were impermissibly employed, Defendants argue that the existence of either during Plaintiffs' closing justifies a new trial. The Reptile Theory originates from a book by David Ball and Don Keenan. *See* Horizon Defs.' Mots. in Limine 23–24 (doc. 82). It is a litigation strategy used by plaintiffs' attorneys to appeal to jurors' "reptilian brains," or that portion of the human brain that triggers survival instincts. *See* Taylor Denslow Brewer, *Confronting the Reptile in Virginia*, 30 J. CIV. LITIG. 187, 187–88 (2018). Golden Rule arguments, though somewhat related, are employed when counsel or witnesses encourage the jury to put themselves in the position of a

party and render a verdict that the jurors would want if they were in that party's position.  *See ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 2019 WL 1651038, at *21 (D. Or. April 17, 2019).

Here, the Court does not find either of these theories to have been improperly employed.  Plaintiffs agree that Golden Rule arguments are not permitted.  The dispute between the parties seems to concern whether discussing safety or making references to the community's conscience is an impermissible version of the Golden Rule argument.  But Ninth Circuit case law indicates that references to the conscience of the community are not necessarily problematic.  *See People of Guam v. Quichocho*, 973 F.2d 723, 727 (9th Cir. 1992) (stating that appeals to the jury to act as a conscience of the community are not impermissible unless they are specifically designed to inflame the jury).  Even if the Court were to agree with Defendants that references to being the conscience of the community were error, Defendants' argument would also be unconvincing since Defendants' counsel himself made such references during the trial: "You have a very important job here.  You're not only the voice of the community but the conscience of the community."  D'Amore Decl., Ex. J, Trial Day 9 Tr. at 1919:23–1920:2.

Additionally, the Court cannot identify where Defendants believe Reptile Theory was impermissibly employed.  Defendants only point to references to Plaintiffs' counsel reminding the jury during closing of its role as the voice or conscience of the community.  To that extent, the Court disagrees with Defendants' characterization.

Even if the Court agreed that impermissible references to, or utilization of, Reptile Theory or the Golden Rule took place, Defendants failed to make timely objections to preserve these issues.  The threshold for granting a new trial is high, especially when the defendants fail to object to the alleged misconduct.  *See Settlegoode v. Portland Public Schools*, 371 F.3d 503, 517 (9th Cir. 2004).  While Defendants state that they were simply following the Court's direction to not object during closing statements, there was time "after the closing argument and before the jury begins deliberations [to] permit the judge to examine the alleged prejudice and to admonish . . . counsel or issue a curative instruction, if warranted." *Id.*  There was ample opportunity for Defendants to raise objections after the jury had been released for the day.  Plaintiffs' counsel presented their closing arguments on the afternoon of the eighth day of trial and Defendants gave their closing argument the next morning. D'Amore Decl., Ex. I, Trial Day 8 Tr. at 1899:22–1900:15.  Yet, Defendants did not raise any objection.

Finally, as the Ninth Circuit has explained, "[u]sing some degree of emotionally charged language during closing argument in a civil case is a well-accepted tactic in American courtrooms." *Settlegoode,* 371 F.3 at 519.  The Court finds Plaintiffs' remarks during closing to be within the bounds of permissible argument.

**B. The Animation**

Defendants argue that an animation that Plaintiffs played for the jury during trial was not properly authenticated, inflamed the passions of the jury, and justifies having a new trial.  I disagree.

Trial courts have wide discretion in admitting or excluding demonstrative evidence.  *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773 n.9 (9th Cir. 1981). Computer animations are allowed in the Ninth Circuit.  *See Friend v. Time Mfg. Co.*, 2006 WL 2135807, at *20 (D. Ariz. July 28, 2006) (*citing Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998)).  "At a minimum, the animation's proponent must show the computer simulation fairly and accurately depicts what it represents, whether through the computer expert who prepared it or some other witness who is qualified to so testify, and the opposing party must be afforded an opportunity for cross-examination."  *Id*. Animations are also endorsed by the Federal Rules of Evidence.  *See* Federal Rules of Evidence Manual § 403.02 (2018) ("In order to explain or prove how a disputed event occurred, a party may find it helpful to demonstrate the event in Court, or to provide a videotaped or even a computerized recreation of the disputed event.").  The standard for admission of computer animations is the same as for demonstrative evidence.  *See Friend*, 2006 WL 2135807, at *20 ("The use of computer animations is allowed when it satisfies the usual foundational requirements for demonstrative evidence.").

Here, Defendants fail to explain how Plaintiffs' animations were unduly prejudicial.  Plaintiffs hired a technical animator who created a demonstrative animation to show the jury what Plaintiffs believe occurred on the day of the accident.

During trial, the Court allowed Plaintiffs to question their accident reconstructionist, Mr. Fries, to lay the foundation for the video.  Mr. Fries testified that he reviewed the draft animations, made comments, reviewed the final animation, and affirmed that it was a general representation of what had happened.  This Court found this testimony to be sufficient for authenticating the animation and allowed it to be played to the jury.

Additionally, Defendants' argument is less persuasive than it may otherwise be considering the fact that they had "the opportunity during cross-examination to explore [their] concerns about the credibility or authenticity" of that graphic representation.  *See Rogers v. Raymark Indus., Inc.*, 922 F2d 1426, 1433 n.4 (9th Cir. 1991).  Defendants' accident reconstructionist, Keith Cronrath, testified that Plaintiffs' animation did not accurately reflect the facts on the day of the accident.  The jury was entitled to take this testimony into consideration.  Finally, the Court instructed the jury that the animations "are only as good as the underlying evidence that support them, and you should therefore give them only such weight as you think the underlying evidence deserves."  D'Amore Decl., Ex. B, Trial Day 1 Tr. at 150:16-151:3.  Thus, the animations do not provide Defendants a basis for a new trial.

## C. Law Enforcement Testimony

Defendants argue that Trooper Kim Waddell should not have been allowed to testify about defendant Hogaboom's credibility as an eyewitness and whether his driving was aggressive.

Law enforcement officials may offer lay opinion testimony, but it is necessary that those "opinions are based upon . . . direct perception of the event, are not speculative, and are helpful to the determination of factual issues before the jury." *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) (citing *United States v. De Peri*, 778 F.2d 963, 977 (3d Cir. 1985)).  The Ninth Circuit has held that police officers may testify as to "what they did and why they did it, and what they based [their] actions on," but they may not provide opinion testimony on issues pertinent to the case that would only be appropriate for those retained as experts.  *Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 635 (E.D. Cal. 2009 (citing *Moran v. Pittsburgh-Des Moines Steel Co.*, 6 F.R.D. 594 (W.D. Pa. 1947).

Here, it was not error for Trooper Waddell to comment on Hogaboom's credibility during her investigation.  The brief exchange between counsel for Plaintiffs and Trooper Waddell that Defendants take issue with is the following:

> Q. And we talk about credibility.  Would it be fair to say after you saw Mr. Hogaboom's sworn testimony, which was exactly the opposite of what he had told you, that Mr. Hogaboom had no credibility?
>
> A. Correct.
>
> [Plaintiff's counsel]: Thank you.  Nothing further.

Def.'s Mot. for New Trial or Remittitur at 33.  Defendants have not cited any case law that places a per se bar on an officer commenting on a witness' credibility.  Instead, Defendants seem to concede that credibility comments are not necessarily problematic, but only if such comments are about the witnesses' observations during

an investigation.  They argue that Trooper Waddell's comments were based on her observations of Hogaboom's sworn testimony, and were thus improper.

Defendants' argument, which essentially entails "vouching" for a witness' credibility, fails because they have little support for it.  Defendants cite *United States v. Severeid*, 609 F. App'x 931, 932 (9th Cir. 2015), for the proposition that "vouching can amount to plain error and requires reversal even where there was no objection." *See* Def.'s Reply Br. at 21.  That case, however, was a criminal case where the prosecutor was vouching for the credibility of the government and calling the criminal defendants "very good liars."  This is not at all what happened with Trooper Waddell's testimony.

"Vouching  occurs  when  a  prosecutor  "place[s]  the  prestige  of  the government behind the witness or . . . indicate[s] that information not presented to the jury supports the witness's testimony.'"  *United States v. Rangel–Guzman*, 752 F.3d 1222, 1224 (9th Cir. 2014) (quoting *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980)).  Trooper Waddell did not vouch for the credibility of herself as a government official or the credibility of others.  She was simply testifying based on her observations during and after the investigation.  A fair reading of the Ninth Circuit's memorandum opinion in *Severeid* makes clear that government vouching was the larger concern that led the Court to order a new trial, and the comparison of the government's credibility with that of the defendants'.  The Ninth Circuit explained:

> While [defendant] challenges several of the prosecutor's statements as
> instances of improper vouching, we focus on the prosecutor's statements

> *about the respective credibility of [defendant] and his witness* . . . on the
> one hand, and [the] Officer, on the other hand.  We find troubling the
> prosecutor's argument, especially in light of the fact that the jury was
> tasked with a close credibility contest.  In particular, the statement that
> [the] Officer, the prosecution's own witness, was an "honest officer" is
> the paradigmatic example of impermissible vouching.

*See United States v. Severeid*, 609 F. App'x 931, 933 (9th Cir. 2015).

It is also notable that all of Defendants' cited cases are criminal ones
where vouching on behalf of the government can have uniquely prejudicial
effects on the defendant.  *See State v. Inman*, 275 Or. App. 920, 939 (2015);
*State v. Salas-Juarez*, 264 Ore. App. 57, 63 (2014); *United States v. Severeid*,
609 F. App'x 931, 932 (9th Cir. 2015).  Even if impermissible vouching may
have occurred regarding Trooper Waddell's testimony, the harm from the brief
exchange between Trooper Waddell and Plaintiffs' counsel in the course of a
two-week trial lacks the level of significance required for the Court to grant a
new trial.  The fact that Defendants did not object is yet another reason why
granting a new trial in this context would be inappropriate.  *See Draper v.
Rosario*, 836 F.3d 1072, 1085–86 (9th Cir. 2016) (not reversible error where
Court did not to take sua sponte corrective action when defense counsel
improperly vouched for the credibility of a witness in closing argument).  Thus,
even if the Court was inclined to agree with Defendants' characterization of
Trooper Waddell's statement as improper vouching, Defendants should have
made an objection to the Court during trial.  That would have given the Court
a chance to consider a curative instruction to address any possible harm.  They

did not.   In either case the Court is not persuaded that improper vouching took

place.

### D. Jury Question

Defendants argue that the Court's response to a jury question during

deliberations  likely caused the jury to double count noneconomic damages for loss of

companionship, *i.e.*, award damages to both Matthew Allison and the Estate of Sara

Allison for loss of companionship when only the Estate was entitled to such damages.

The decision regarding how best to answer jury questions is within the

discretion of the trial court.  *See United States v. Romero-Avila*, 210 F.3d 1017, 1024

(9th Cir. 200).  The Court needs a definite and firm conviction that it committed a

clear error in judgment before disturbing the jury's verdict.  *See id.*  "Although the

trial court is obliged to eliminate confusion when a jury asks for clarification of a

particular  issue, the necessity, extent and character of supplemental instructions,

lies within the discretion of the trial court.  *United States v. Solomon*, 825 F.2d 1292,

1295 (9th Cir. 1987) (internal quotation marks omitted).

Here, during their deliberations the jury asked: "Does the noneconomic value

for Matt include the loss of Sara? Or is that valued in noneconomic value for the

Estate of Sara Allison?"  After some discussion with the parties, the Court answered

the question with a simple "yes and yes."  Defendants argue, then and now, that such

an answer could lead the jury to conclude that it may award the same noneconomic

damages twice.  I disagree.

Page 15 – OPINION AND ORDER

As the jury was instructed, Matthew Allison was entitled to noneconomic damages based on his cause of action for negligent infliction of emotional distress under Oregon law. *See Philibert v. Kluser*, 385 P.3d 1038, 1047 (Or. 2016). The jury was instructed on the nature of his personal claim and associated damages, which included noneconomic damages for mental and emotional pain and suffering. Thus, Matthew's noneconomic value includes witnessing the loss of his wife. The Estate of Sara Allison was also entitled to damages based on Matthew's nonmonetary losses, but these stem from the loss of Sara Allison's society and companionship. *See* Or. Rev. Stat. §30.020(2)(d); *see also* Jury Insts. 28–29, doc. 167. The jury was instructed on this issue in Jury Instruction Nos. 24 and 58. There was evidence presented to the jury that Matthew Allison, personally and as a beneficiary of the Estate, suffered significant nonmonetary losses. The damages attributed to the loss of Sara's companionship and society were included in the Estate's claim, but Matthew's claim for perceiving her injuries and death were included in his noneconomic damages. Accordingly, the Court opted to answer with "yes and yes" to the jurors' question. The Court does not conclude here that its answer to the jurors' question constituted error, especially one warranting a new trial. *See Romero-Avila*, 210 F.3d at 1024. After inviting discussion with the parties, the Court found it best to avoid supplemental explanations and utilized its discretion in how best to address the question. *See Solomon*, 825 F.2d at 1295. The Court is not persuaded that its answer constituted error and it is far from clear that the answer "likely" caused the jurors to mistakenly double-count damages, as Defendants argue.

Page 16 – OPINION AND ORDER

## II.    Motion for Remittitur

Alternative to a new trial, Defendants argue that the Court should reduce the jury's damages verdict because it is grossly excessive.

In general, a "motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under FRCP 59." *Morris v. Walgreen Oshkosh, Inc.*, 2016 WL 1704320, at *3 (D. Or. 2016); *see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989) (explaining that Rule 59 applies to motions for a new trial and remittitur).   In the Ninth Circuit, when the jury's verdict is challenged as excessive, the court affords "substantial deference to a jury's finding of the appropriate amount of damages." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008) (citing *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996)).   The court will uphold the jury's verdict unless "the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte*, 95 F.3d at 1435.

Under *Erie Railroad Co. v. Tompkins*, however, a federal court sitting in diversity jurisdiction must apply state substantive law. *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415 (1996).   In this case, then, "state substantive law determines whether a jury verdict is excessive or inadequate." *VanValkenburg v. Or. Dep't of Corr.*, 2017 WL 532950, at *14 (D. Or. 2017) (*citing Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278–79 (1989)); *Gasperini*, 518 U.S. at 430–31.

I find that the standard for disturbing the jury's verdict here is not met. Plaintiffs previously briefed and argued that the purpose of Oregon's cap on noneconomic damages would not be served by applying it to out of state parties. This Court then ruled that Idaho (Plaintiffs' domicile) was the most appropriate state on the question of whether the Court should apply a cap on noneconomic damages. Defendants now argue that under Idaho law the jury's award is excessive and must be reduced by the Court. However, the Court is required to give "substantial deference" to the award of the jury, *see Harper*, 533 F.3d 1028, and Defendants fail to explain why they believe the award is excessive as a matter of law, *i.e.*, "clearly not supported by the evidence" or "based only on speculation or guesswork," as required by *Del Monte*, 95 F.3d at 1435.

First, the Court is not persuaded that because Idaho law was applied to the issue of whether to cap noneconomic damages that this also requires that Idaho law must be applied for purposes of determining whether a jury's award is excessive. These are different issues. Defendants are taking the Court's narrow ruling on the issue of the damages cap and applying it to the issue of remittitur. *See* Defs.' Mot. for New Trial or Remittitur 19 (stating that there is "no meaningful way to distinguish [the Court's prior] analysis from the analysis that the Court must perform here when deciding which state's laws apply to the question of whether the amount of the verdict was excessive.").

Under Oregon's choice-of-law rules, the Court must first analyze what law applies to a particular legal issue by looking at whether the parties have a common

Page 18 – OPINION AND ORDER

domicile.  Or. Rev. Stat. § 15.440(2)(a).  At the time of the collision, Plaintiffs did not reside in the same state as any of the defendants who caused their injuries.  However, the parties are treated as if they are domiciled in the same state if the laws of the parties' different domiciles produce the same outcome on a disputed issue, and the laws of the non-Oregon domiciles govern.  *Id.* at § 15.440(2)(b).  While the laws regarding caps on noneconomic damages produce the same outcome in this case because neither Indiana nor Idaho (the domiciles of Plaintiffs and Horizon) place a cap on noneconomic damages, the same is not true with respect to the issue of excessiveness.

Idaho law typically limits noneconomic damages in tort actions, *see* Idaho Code § 6-1603(1), unless the plaintiff can prove either of two exceptions: that the defendant committed a felony beyond a reasonable doubt or that the cause of action arises out of the defendant's willful or reckless misconduct.  *Id.* at § 6-1603(4).  After the jury found that "Hogaboom showed reckless and outrageous indifference to a highly unreasonable risk of harm, with a conscience indifference to the health, safety, and welfare of others," the Court determined that no cap would apply under Idaho law, and therefore "there is no cap on the . . . noneconomic damages."  D'Amore Decl., Ex. J, Trial Day 9 Tr., 2005:2-10.  When Defendants asked whether the Court meant Indiana law the Court replied that it didn't matter which jurisdiction's laws we applied because neither Idaho nor Indiana had a cap.  *Id.* at 2005:12-16.  The Court's ruling was understood to cover the issue of whether a cap applied, not to encompass all issues related to noneconomic damages.

With respect to the issue of excessiveness, however, there is a conflict between the laws of the parties' domiciles Idaho and Indiana, and so Oregon law governs. *See* Or. Rev. Stat. § 15.440(3)(b). Since the parties lived in different states at the time of the accident, the Court must determine whether the laws of those different states produce the same outcome on the issue of excessiveness. *See* Or. Rev. Stat. § 15.440(2). There are significant differences in the legal standards in Idaho and Indiana on the issue of excessiveness.

Indiana imposes a very limited "strict standard of review" for any allegation of excessive damages. *Indian Trucking v. Harber*, 752 N.E.2d 168, 177 (Ind. Ct. App. 2001). Under Indiana law, a court may grant a new trial or remittitur "only where the evidence is insufficient to support the verdict as a matter of law." *Russell v. Neumann-Steadman*, 759 N.E.2d 234, 237 (Ind. Ct. App. 2001). The Indiana Supreme Court has stated that the jury is afforded "great deference" in its determination of a plaintiff's damages, and a verdict will not be deemed "to be the result of improper considerations unless it cannot be explained on any other reasonable ground." *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001).

Defendants cite case law from Idaho in support of their contention that the Court should find the jury's award to be excessive. However, the standard for such an inquiry is simply not the same as it is in Indiana. In *Dinneen v. Finch*, the Idaho Supreme Court stated

> Where a motion for a new trial is premised on inadequate or excessive damages, the trial court must weigh the evidence and then compare the

jury's award to what he would have given had there been no jury.  If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record.  The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive "as a matter of law." Additionally, the rule that a verdict will not be set aside when supported by substantial but conflicting evidence has no application to a trial court ruling upon a motion for a new trial.

100 Idaho 620, 625–26 (1979).  "A new trial is warranted where the jury's determination of damages appears to have resulted from passion or prejudice." *Litke v. Munkhoff*, 163 Idaho 627, 633 (2018).    Under Idaho law, courts may engage in much more subjective determinations about the excessiveness of damages in the judiciary's view.  This is very different from the highly deferential view Indiana law requires courts to take regarding jury damage awards. *See. Manuilov*, 742 N.E.2d at 462 (jury awards cannot be disturbed unless they can't be explained on any reasonable grounds).  Because there is a conflict between the laws of the parties' domiciles, *i.e.*, Indiana and Idaho, Oregon's choice of law statute requires that the law of the state where the conduct and injury occurred  applies, which is Oregon. *See* Or. Rev. Stat. § 15.440(3)(b).

Here, the jury found it appropriate to award $7 million in noneconomic damages to Matthew Allison and $10 million in noneconomic damages to the Estate of Sara Allison.  Under the Oregon Constitution, the Court lacks the discretion to award a new trial or remittitur based on excessiveness absent a finding of "no evidence" to support the verdict.  Or. Const. Art. VII, § 3; *see also Van Lom v. Schneiderman*, 210 P.2d 461, 463–65 (Or. 1949) (explaining that Oregon courts do

not have the power to re-examine the evidence and set aside a verdict because it was excessive).  As Defendants readily admitted during trial, that there were "tremendous damages in this case.  There's a death of a young lady and loss to a young man." D'Amore Decl., Ex. B, Trial Day 1 Tr. at 115:14-18.   During closing argument, Defendants stated that "Matt Allison suffered horrible injuries to himself and emotional injury and damage. No dispute about that whatsoever," and that "Matt Allison and the Kleins have suffered a terrible loss here, but there's no formula for calculating the damage in a wrongful death case," and D'Amore Decl., Ex. J, Trial Day 9 Tr. at 1967:14-16, 22-24.

Matthew Allison testified that losing his wife Sara in the fatal crash caused him to lose everything and that he still has memories of her death.  He told the jury that he has "an image burned in his brain," one that "will be there until the day [he] die[s] . . . of standing on the driver's side of the car and looking down at [Sara] and seeing the blood running out of her nose, taking her very, very labored breaths." D'Amore Decl., Ex. G, Trial Day 6 Tr. At 1166:5-11.  And as beneficiaries of the Estate, Sara's parents described for the jury how they were affected by news of their daughter's wreck.  Sara's mother described having to pull over to call Matt when she heard of the news and the beginning of what she describes as the "most difficult week of her life."  *Id.* at 911:24-912:5.  Although they wanted to see Sara's body after the wreck, they testified that the funeral director advised them against viewing her mutilated body, saying, "you don't want to see her like this" or "remember her that way."  *Id.* at 927:20-928:3, 967:8-13.

These are just a few examples of the testimony that the jury heard in the course of a two-week trial.  After assessing the evidence, the jury found it reasonable to give a total of $17 million in noneconomic damages to Matthew  and the Estate.  Given the testimony and the evidence at trial, I find the jury's award to be supported by substantial evidence, and under Oregon law I am limited by the state's constitution in disturbing the jury's award.  Thus, Defendants' request for remittitur is denied.

## CONCLUSION

Defendants Motion for a New Trial, or in the Alternative Remittitur (doc. 185) is DENIED.

IT IS SO ORDERED.

Dated this 11th day of October, 2019.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge